OPINION
{¶ 1} The following appeal was submitted on the briefs of the parties. Appellant, Peter Skjold, II, appeals from a judgment of the Geauga County Court of Common Pleas, convicting him of two counts of felonious assault, first degree felonies, in violation of R.C. 2903.11. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On June 6, 2003, Deputy Louis W. Filby ("Deputy Filby"), of the Geauga County Sheriff's Department, filed two complaints with the Chardon Municipal Court, each alleging that appellant committed attempted aggravated murder, a first degree felony, in violation of R.C. 2903.01.[1]
 {¶ 3} Appellant appeared on June 6, 2003. The court determined that a recognizance bond was inappropriate, and appellant was admitted to bail upon his execution of an appearance bond in the amount of $250,000. Appellant waived a preliminary hearing, and the matter was bound over to the Geauga County Court of Common Pleas.
 {¶ 4} On approximately June 30, 2003, appellant was indicted on two counts of attempted aggravated murder, first degree felonies, in violation of R.C. 2923.02(A), and two counts of felonious assault, the victim of the offense being a peace officer, first degree felonies, in violation of R.C. 2903.11. All counts carried a firearm specification.
 {¶ 5} Appellant was arraigned on July 10, 2003, and he entered a plea of not guilty to all charges contained within the indictment. The trial court accepted the plea and continued the $250,000 bond previously set by the municipal court.
 {¶ 6} A three-day jury trial commenced on September 3, 2003. The following facts were adduced from the testimony and exhibits.
 {¶ 7} Deborah Skjold ("Ms. Skjold"), appellant's sister, lived directly behind the home of appellant. On June 5, 2003, at approximately 10:04 p.m., Ms. Skjold dialed 911 to report that appellant was harassing and threatening her and firing his gun from his residence.
 {¶ 8} Deputy Filby responded to the call and took a defensive position at the corner of a detached garage located at the northeast corner of appellant's residence. Deputy Filby testified that the house was dark, and he illuminated the house with a flashlight and called out to appellant by name. Shortly thereafter, according to Deputy Filby, gunshots rang out on the west side of the house towards a tree line. Deputy Filby then determined that appellant was in the residence and again attempted to verbally communicate with him. Deputy Filby indicated to appellant that he needed appellant to surrender his weapon and come out of the house. Appellant did not reply, and there was a period of silence. Shortly thereafter, more shots were fired on the west side of the house.
 {¶ 9} Deputy Filby continued to communicate with appellant, indicating that he wanted appellant to put the gun down and come out of the house. According to Deputy Filby, there were periods of silence broken by gunshots. Deputy Filby testified that, at some point, appellant yelled "[h]ey, Dep, come on in and get me. I got one for you, and I got one for me." Appellant also instructed Deputy Filby to turn off his flashlight, or appellant was going to kill him. Deputy Filby continued to light the exterior of appellant's home with his flashlight while attempting to convince him to surrender.
 {¶ 10} Deputy Edward Hunziker ("Deputy Hunziker") arrived at the scene shortly after Deputy Filby. Deputy Hunziker initially took a position behind a shed in the back yard of appellant's residence, but he then moved behind a tree to the west of the shed.
 {¶ 11} Deputy Filby continued to encourage appellant to surrender. When Deputy Filby peered around the corner of the garage and turned his flashlight to the rear door of the residence, he saw appellant leveling a gun in his direction. Deputy Filby committed attempted aggravated murder. testified that appellant then fired at him. Deputy Hunziker called out to Deputy Filby to see if he was injured. Appellant then fired his weapon at Deputy Hunziker, but he hit the tree behind which Deputy Hunziker was standing. Neither deputy was injured, but Deputy Filby testified that he felt something hit his arm.
 {¶ 12} The deputies then dropped back and waited for the Lake County S.W.A.T. team (the "SWAT team") to arrive. The SWAT team arrived at approximately 12:45 a.m. on June 6, 2003. Captain Frank Leonbruno ("Captain Leonbruno") was the lead negotiator on the scene and used a bullhorn to urge appellant to surrender.
 {¶ 13} Lieutenant Ronald G. Walters ("Lieutenant Walters"), the SWAT team leader, testified that on June 6, 2003, at approximately 4:50 a.m., negotiations had deteriorated. The decision was made to deploy pepper gas into appellant's home. Appellant emerged from the house unarmed within one minute of the deployment of pepper gas and was taken into custody without incident.
 {¶ 14} Detective Frank J. Sanborn ("Detective Sanborn") secured and executed a search warrant for appellant's home on June 6, 2003. Detective Sanborn recovered a JC Higgins Model 20 12-gauge shotgun, a Remington 870 12-gauge shotgun, thirty-six spent 12-gauge shotgun shells, a Savage .22 caliber rifle, two spent .22 caliber casings, two hundred live .22 caliber rounds, and two air rifles. Photos of the shotguns and rifles were admitted into evidence upon stipulation, and the casings and rounds themselves were admitted. Detective Sanborn also testified that he examined the back yard and found what appeared to be fresh pellet damage in the garage where Deputy Filby was located and on the tree that Deputy Hunziker had been standing behind.
 {¶ 15} Appellant testified that he was depressed and drunk and did not remember much of the night. The night of the incident, appellant purchased a 30-pack of Coors beer. Once home, he "pounded the beers" and took some muscle relaxants. After that, appellant remembered very little before the pepper gas was deployed into his residence. The pepper gas burned his eyes, and he walked out of the house and was hosed off. According to appellant, the next thing he remembered was waking up in a holding cell. Appellant testified that he did not remember firing any weapons or speaking to any officers that night.
 {¶ 16} The jury was instructed on attempted aggravated murder and felonious assault as to each deputy, a firearm specification with respect to all four counts, and the lesser included offense of negligent assault for each of the four counts. The jury found appellant guilty, beyond a reasonable doubt, of felonious assault, with a firearm specification, as to Deputy Hunziker and Deputy Filby. The jury acquitted appellant of both attempted
aggravated murder charges, but the jury found appellant guilty, beyond a reasonable doubt, of the lesser crime of negligent assault, a third degree misdemeanor, in violation of R.C.2903.14(A), as relating to both deputies.
 {¶ 17} On September 19, 2003, appellant moved for acquittal, pursuant to Crim.R. 29(C), on both convictions for felonious assault and both related firearm specifications. The state responded. The trial court denied appellant's motion on September 25, 2003.
 {¶ 18} The trial court conducted a sentencing hearing on October 14, 2003. According to an October 27, 2003 judgment entry, the trial court considered "* * * the record; information presented by, or on behalf of, [appellant], the prosecuting attorney, the PSI report; [appellant's] ability to pay financial sanctions; and any victim impact statement(s), the Court, based upon the purposes and principles of sentencing (R.C. 2929.11) and the sentencing factors [seriousness and recidivism (R.C.2929.12)]."
 {¶ 19} According to the judgment entry, the trial court then imposed upon appellant a sentence of three years of imprisonment for each of the two convictions for felonious assault, to be served concurrently with each other. The trial court also sentenced appellant to seven years of imprisonment for the two firearm specifications, which merged at the time of sentencing, and were to be served consecutively to and prior to the prison terms imposed for the convictions for felonious assault. The court did not impose a sentence on appellant's two convictions for negligent assault.
 {¶ 20} From this judgment, appellant appeals and sets forth the following assignment of error:
 {¶ 21} "[1.] The verdicts of Felonious Assault of a Peace Officer are against the weight of the evidence."
 {¶ 22} When reviewing a claim that a judgment is against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 23} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of witnesses. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 24} R.C. 2903.11 defines felonious assault as knowingly causing serious physical harm to another or causing or attempting to cause physical harm to another by means of a deadly weapon. Felonious assault does not require that a defendant intend to cause serious physical harm, and R.C. 2903.11 only requires that the defendant acted with awareness that the conduct probably will cause such harm. State v. Lee (Sept. 3, 1998), 10th Dist. No. 97APA12-1629, 1998 Ohio App. LEXIS 4150, at 7, citing State v.Edwards (1992), 83 Ohio App.3d 357, 361. Further, Ohio law provides that a person is presumed to intend the natural, reasonable, and probable consequences of his voluntary acts.State v. Seiber (1990), 56 Ohio St.3d 4, 15; State v. Fugate
(1973), 36 Ohio App.2d 131, 132.
 {¶ 25} In the instant matter, appellant argues that his convictions for felonious assault were against the manifest weight of the evidence because the record does not support any finding that he intended to injure either deputy. This argument is not welltaken.
 {¶ 26} The record contains abundant credible evidence thatsupported the jury's finding, beyond a reasonable doubt, that appellant acted with the intent to injure both deputies and/or that he acted with the awareness that his conduct would probably cause such harm. First, the jury heard Deputy Filby testify that appellant yelled to him, "[h]ey, Dep, come on in and get me. I got one for you, and I got one for me." The jury also heard Deputy Filby testify that appellant communicated to him to turn off his flashlight, or appellant stated he would kill him.
 {¶ 27} Further, the jury heard Deputy Filby's testimony that, when he peered around the corner of the garage and turned his flashlight on to illuminate the door of the residence, appellant was leveling a gun in his direction. Deputy Filby testified that appellant then fired at him. According to Deputy Filby, he felt something hit his arm.
 {¶ 28} The jury also heard the testimony of Deputy Hunziker. Deputy Hunziker testified that he observed the shotgun blast in Deputy Filby's direction. He also testified that, within seconds of when he called out to see if Deputy Filby was injured, appellant fired in his own direction. Deputy Hunziker testified that he heard objects hitting the tree which he had been standing behind.
 {¶ 29} The jury also heard the testimony of Detective Sanborn, who stated that he examined the back yard and found what appeared to be fresh pellet damage in the garage where Deputy Filby was located and on the tree which Deputy Hunziker had been standing behind.
 {¶ 30} In addition to this testimony, the jury watched a video of the crime scene which was taken the morning after the incident and viewed numerous photographs taken at that same time which showed extensive pellet damage around the residence. Also presented to the jury was the "shot pattern" of each of the shotguns owned by appellant, and testimony was presented demonstrating how the pellets disburse when a shotgun is fired. Thirty-six spent 12-gauge shotgun shells, two spent .22 caliber casings, and two hundred live .22 caliber rounds were taken from the crime scene and admitted into evidence.
 {¶ 31} Appellant contends that his conviction was not supported by the evidence and that this is demonstrated by the lack of "* * * physical evidence of the pellets striking the objects near [Deputy] Filby" or pellets in the tree which concealed Deputy Hunziker. The instant matter was the classic credibility contest between appellant and the police, and appellant himself testified he did not remember most of the incident. The jury chose to credit the testimony of the deputies.
 {¶ 32} As we noted earlier, a reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of witnesses. DeHass at paragraph two of the syllabus. As stated earlier, felonious assault does not require that the defendant intend to cause serious physical harm, but only that the defendant acted with awareness that the conduct would probably cause such harm. Lee
at 361. Ohio law provides that a person is presumed to intend the natural, reasonable, and probable consequences of his voluntary acts. Seiber at 15; Fugate at 132.
 {¶ 33} Accordingly, appellant's conduct, the threatening verbal exchanges, and the physical evidence, coupled with the testimony that appellant shot in the specific direction of each deputy, illustrate that the jury did not lose its way and create a manifest miscarriage of justice when finding appellant guilty of two counts of felonious assault. Appellant's sole assignment of error is without merit, and we hereby affirm the judgment of the trial court.
Ford, P.J., O'Neill, J., concur.
[1] It is clear that the complaints each contain a misstatement. R.C. 2903.01 actually refers to aggravated murder, not attempted aggravated murder. Despite this, the complaints clearly allege that appellant.