DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the Wood County Court of Common Pleas convicting appellant, John Nutekpor, of one count of sexual battery in violation of R.C. 2907.03(A)(1) a third degree felony. For the following reasons, this court affirms the judgment of the trial court.
 {¶ 2} On appeal, appellant, John Nutekpor, sets forth the following assignments of error:
 {¶ 3} "I. The court committed error in failing to grant the Appellant's motion of acquittal pursuant to Crim.R. 29 as requested by Appellant following presentation of the State's evidence and as renewed by the Appellant at the conclusion of Appellant's evidence as evidence was legally insufficient to support a conviction of sexual battery against him.
 {¶ 4} "II. The trial court erred in denying Defendant's motion for acquittal pursuant to Crim.R. 29 because the conviction is against the manifest weight of the evidence.
 {¶ 5} "III. The Defendant suffered ineffective assistance of counsel."
 {¶ 6} The facts relevant to the issues raised on appeal are as follows. Appellant, John Nutekpor, first met the victim, Corinna Campbell, at a musicology conference. He is a native of Ghana and she had spent some time studying abroad there. Through this contact and others at the conference, Campbell was able to secure a position in a very small and highly technical musicology graduate program at Bowling Green State University. Nutekpor was also in the program. The two often saw each other due to overlapping schedules.
 {¶ 7} Nutekpor invited Campbell to his apartment for a Ghanaian dinner. On September 13, 2003, Campbell accepted his invitation and he picked her up around 9:00 pm. They ate together and afterward watched some "home movie" type films. After the movies, they decided to go to a local bar for a drink. Before leaving for the bar, they kissed. They had a few drinks but left the bar relatively quickly because of excessive noise. On the way home Nutekpor put his arm around Campbell and kissed her again. Campbell was a little surprised when they arrived back at Nutekpor's apartment, but she entered his home and the kissing continued in his bedroom.
 {¶ 8} Although the record is unclear as to the exact time, Nutekpor began to remove Campbell's clothing. Campbell was uncomfortable with this, and "expressed alarm" at how fast things were moving. She did not want the relationship to proceed to sexual intimacy and asked Nutekpor to "slow down." Nutekpor did not slow down. He removed her shirt, threw it on the floor, and began to fondle Campbell. Campbell continued to verbally resist Nutekpor, but appellant used leverage and his weight to pin her to his bed.
 {¶ 9} Campbell continued to plead and reason with Nutekpor, and at one point, it seemed as if he would relent. He stepped away from her and they had a conversation. He expressed his desire to have sex with her, and she told him it was too quick and any "needs" he may have did not justify his conduct. Nutekpor then left the room briefly to get a condom from his roommate, during which time Campbell began to re-dress. However, when Nutekpor returned he shoved her back on the bed, removed his clothing and had sex with her. Campbell pleaded with him to stop, and told him no, but Nutekpor would "shush" her and tell her to "calm down." After the act was completed, Campbell again tried to reason with Nutekpor and get out of the situation, but every time she attempted to leave, he would push her back onto the bed. Before the night was over, he would have sex with her again, this time until she passed out.
 {¶ 10} The next morning, Nutekpor came into the room with a condom and asked, "May I?" Campbell consented only because she felt it would be useless to resist given the previous night. He then drove her home.
 {¶ 11} Campbell first reported the incident at the campus health center, and then to the Bowling Green Police Department. Campbell's faculty advisors, and peer sponsors met with her to discuss the incident. The faculty then questioned Nutekpor about it. One faculty member testified that during the questioning, Nutekpor was evasive, "[dancing] around some of the questions." However, by the end of the meeting, Nutekpor admitted he "couldn't control his will," and "said basically, `I forced my will on her.'" Another student in the program testified that Nutekpor said, that if he could have controlled his will power, "this wouldn't have happened."
 {¶ 12} A grand jury indicted Nutekpor on one count of rape and one count of sexual battery. The jury took his case on May 5, 2005. After deliberation, the jury could not reach a verdict on the rape charge, but found Nutekpor guilty of sexual battery. At sentencing, the court classified Nutekpor as a sexually oriented offender and imposed a one-year term of imprisonment. The court dismissed the rape charge without prejudice. This appeal followed.
 {¶ 13} On appeal, appellant makes three arguments. First, he argues the evidence presented at trial was insufficient to support his conviction. Second, he argues his conviction is against the manifest weight of the evidence. Finally, he argues he received ineffective counsel. We address each argument independently below.
 A. Sufficiency of the Evidence {¶ 14} In evaluating a case before the bar, an acquittal is appropriate only when the evidence would not sustain a conviction for the offense. Crim.R. 29(A). An appellate court must apply the same test whether it is reviewing a denial of a motion for acquittal or a challenge based on sufficiency of the evidence to support a conviction. State v. Thompson (1998),127 Ohio App.3d 511, 525. The relevant inquiry is whether a rational factfinder, viewing the evidence in a light most favorable to the state, would have found all the essential elements of the crime proven beyond reasonable doubt. State v. Jones (2000),90 Ohio St.3d 403, 417. The questions is not whether the state's evidence is to be believed, rather it is, if believed, would the evidence support appellant's conviction? State v. Thompkins (1997),78 Ohio St.3d 380, 390.
 {¶ 15} Under R.C. 2907.03(A)(1), sexual battery is established when it can be shown the defendant engaged in sexual conduct with someone who is not a spouse by knowingly coercing the individual into submission by any means that would prevent a person of ordinary resolution from resisting. When the defendant is aware his conduct will probably cause a certain result or when he has knowledge that certain circumstances exist, he acts knowingly. R.C. 2901.22(B). The defendant merely has to be aware that the result may occur. State v. Edwards (1992),83 Ohio App.3d 357, 361. The statute does not define "coercion." However, The Ohio Supreme Court has held that, "[f]orce or threat of force will always constitute coercion that would prevent resistance by a person of ordinary resolution." State v. Wilkins (1980),64 Ohio St.2d 382, 386-387. Thus, sexual battery is a rape with lesser mens rea and "coercion" rather than simply "force."State v. Bajaj, 7th Dist. No. 03 CO 16, 2005-Ohio-2931, at ¶21.
 {¶ 16} The record clearly establishes that Nutekpor and Campbell engaged in sexual conduct and were not married. The record also establishes coercion by Nutekpor. It is reasonable for a jury to conclude that Nutekpor's aggressive removal of Campbell's clothing, his use of leverage and body weight to pin her to the bed, and his repeated apathy to her pleas to stop could constitute "force or threat of force." The conversation between Campbell and Nutekpor establishes his mens rea. At the point where he rolled off her and they discussed his "needs" and her discomfort, he either knew or should have known the result of continuing to force Campbell to remain in the bed. Even if he did not "know" at that point, when he left the room and returned with a condom from his roommate, the result was certain and he acted knowingly. Based on the standards established in Edwards andWilkins, the court appropriately denied Nutekpor's motion for acquittal. Thus, appellant's first assignment of error is not well-taken.
 B. Manifest Weight {¶ 17} Appellate courts will not reverse judgments supported by some competent, credible evidence as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279. Appellate courts should only grant a new trial "in the exceptional case in which the evidence weighs heavily against the conviction." State v.Braden, 98 Ohio St.3d 354, 2003-Ohio-1325, at ¶ 54 (Emphasis added). Although an appellate court may function as a "thirteenth juror," the jury rightly decides which witnesses are credible.State v. Barker (1998), 128 Ohio App.3d 233, 241. A jury is in the position to hear and evaluate credibility in a way that an appellate court cannot glean from a "sterile" transcript of the proceedings. State v. Gibson, 6th Dist. No. S-02-016, 2003-Ohio-1996, at ¶ 26.
 {¶ 18} In light of our determination above that denial of Nutekpor's motion for acquittal was appropriate, his argument here must also fail. Careful review of the record demonstrates no error on the part of the jury. They found enough credible testimony to convict the appellant, and this court will not disturb that decision. Further, appellant fails to point to sufficient evidence in the record to weigh heavily against the conviction. He points only to his own testimony, and does nothing to refute the testimony of the BGSU faculty as to his own statements. This is simply not enough. Thus, appellant's second assignment of error is not well-taken.
 C. Assistance of Counsel {¶ 19} In evaluating an ineffective assistance of counsel claim, an appellate court must always presume a properly licensed attorney is competent. Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301. The party alleging incompetence must submit compelling evidence demonstrating that counsel's actions are so deficient they fall below an objective standard of reasonableness and that the outcome of the case would have been different but for this representation. State v. Womack, 6th Dist. No. L-04-1092,2005-Ohio-2689, at ¶ 14.
 {¶ 20} In support of his incompetence claim, Nutekpor first argues that trial counsel neglected to contact him in the eight months immediately prior to trial. This alleged neglect prohibited trial counsel from mounting an effective defense. As appellee correctly points out (and as admitted by appellant), this allegation finds no support in the record and is therefore not properly before this court.
 {¶ 21} Next, Nutekpor argues trial counsel did not adequately defend against the admission of certain DNA evidence before the trial began. Nutekpor asserts that a hearing on the evidence should have been held a minimum of three days prior to the start of trial. R.C. 2907.02(E) does contain this provision, but appellant's argument ignores the second half of the statute. As appellee correctly points out, the statute allows a trial court in its discretion to hold a hearing at any point, even after trial has begun, if good cause can be shown. Here, the trial court proceeded with the hearing on the challenge to DNA evidence under the "good cause" portion of the statute. That this hearing occurred only 20 minutes prior to voir dire is immaterial because a "good cause" hearing occurs at the court's discretion. The record demonstrates that trial counsel mounted vigorous opposition to the evidence during the hearing. Trial counsel's actions do not become "ineffective" merely because the evidence was ultimately admitted. Nutekpor also argues trial counsel demonstrated incompetence by stipulating to the accuracy of the DNA evidence on the blue underwear. The record reveals the parties stipulated to the admission of the blue underwear using neutral language that in no way implicated Nutekpor. Choosing to stipulate to the accuracy of the DNA evidence in this case is clearly a trial strategy decision. The stipulation in no way affected the outcome of Nutekpor's case and therefore this court will not second-guess trial counsel's decision.
 {¶ 22} Finally, Nutekpor argues trial counsel should have objected to admission of the inculpatory statements made by appellant to BGSU faculty and his peers into evidence. As appellee again accurately points out, Evid.R. 801(D)(2)(a) provides an admission is not hearsay when it is offered against a party opponent. Nutekpor points to nothing in the record that justifies departure from this rule. The record demonstrates trial counsel's representations were competent. Thus, appellant's third assignment of error is not well-taken.
 {¶ 23} On consideration whereof, this court finds appellant was not prejudiced and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J. Pietrykowski, J. Parish, J. Concur.