[Cite as *State v. Curlee-Jones*, 2013-Ohio-1175.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98233**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KATHY CURLEE-JONES

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543407

**BEFORE:** Stewart, A.J., Rocco, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 28, 2013

**ATTORNEY FOR APPELLANT**

Timothy R. Sterkel
1414 South Green Road, Suite 310
South Euclid, OH    44121


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Edward D. Brydle
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, A.J.:

{¶1} Defendant-appellant Kathy Curlee-Jones was found guilty of tampering with evidence, resisting arrest, and two counts of assault on a police officer. The charges arose from a struggle that ensued after she refused to give the police a cell phone that the parties erroneously thought had been used to videotape the arrest of her son, codefendant Lamont Jones. Curlee-Jones believed that video on the cell phone may have documented her claim that the police used excessive force in Lamont's arrest. In this appeal, she argues (1) that the state failed to produce sufficient evidence to support a conviction on all but the resisting arrest count; (2) that the court erred by refusing to allow her to cross-examine the officers involved as to whether they had been involved in prior lawsuits alleging that they used excessive force when making arrests; and (3) that the court erred by refusing to allow her to introduce Cleveland Police Department policy regarding the rights of citizens to videotape police actions.

I

{¶2} Curlee-Jones and the state presented completely different versions of what transpired on the night of her arrest: the police claimed that she was combative, interfering, and profane; she claimed to have been calm and the object of police brutality and excess. Despite these conflicting versions of events, the relevant standard of review for a claim that there is insufficient evidence to support a conviction requires us to view the evidence in a light most favorable to the prosecution to determine whether any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1981), paragraph two of the syllabus. Therefore, we must view the evidence most favorably to the state, not to Curlee-Jones.

{¶3} Viewed in that light, the evidence showed that Lamont Jones and a group of friends and relatives were gathered at Curlee-Jones's home preparing to celebrate Lamont's 21st birthday. A relative and two friends left to proceed to another house where Lamont's birthday party was being held. They were later stopped by three vice unit police cars for walking in the middle of the street. According to police, when one of the three looked as though he was about to flee, they decided to detain all three men and conducted a pat-down. Another person who left Curlee-Jones's house saw the three being detained and ran back to Curlee-Jones's house to report the stop.

{¶4} When Lamont heard about the stop, he ran to the scene yelling, "that's my f***ing people, what's going on?" One of the officers told Lamont to stay back, but Lamont replied, "F**k that, that's my people." Lamont ignored three or four orders to step back, kept trying to evade the assembled officers to reach the three men, and was "yelling and screaming and cursing, loud." One of the officers then put his hand out and pushed Lamont in the chest, saying, "I'm not telling you again, keep going." Another officer stepped between them, at which point Lamont put up his fists, took a fighting stance, and started swinging wildly. The officer responded in kind and knocked Lamont

down. Three officers tried to handcuff Lamont, but because he struggled with them, he was subdued with a taser.

{¶5} As the officers were struggling with Lamont, Curlee-Jones drove up to the scene and parked on the curb. She exited her car and approached the police yelling, "What the hell is going on?" Not knowing who she was and fearing they might lose control of the situation, the police ordered Curlee-Jones to get back in her car and leave the scene. She ignored the order and the police again, rather forcefully, ordered her back to her car to leave the scene. Eventually, Curlee-Jones complied and reentered her vehicle to leave.

{¶6} As Curlee-Jones reentered her car, the police noticed that one of her passengers was holding up a cell phone as though he was shooting a video with it saying, "I got all this, I got all this." A police sergeant determined that any video taken by the phone might document Lamont's actions in assaulting a police officer and resisting arrest, so he ordered that the phone be taken as possible evidence. A detective went up to the open passenger door and ordered that the passenger hand over the phone. The passenger, holding the phone away from the detective, refused several orders to do so. The detective leaned into the car to grab the phone. The passenger then handed the phone to Curlee-Jones, who put it down her shirt and started to accelerate away. When she did so, the detective was part of the way in the car and was being dragged as the car moved. The detective screamed at Curlee-Jones to stop the car, and eventually pulled his gun on her to force her to stop.

{¶7} When Curlee-Jones stopped the car, she refused to exit it. The police pulled her from the car amidst her swinging and kicking at the officers who were trying to handcuff her. She was forced to the ground but struggled, so like her son Lamont, she was subdued by a taser.

{¶8} The parties later determined that the cell phone lacked video capability and contained nothing that documented Lamont's arrest.

II

{¶9} The state charged Curlee-Jones with tampering with evidence under R.C. 2921.12(A)(1). That section states that no person, knowing that an official investigation was in progress, shall "alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." *Id.*

{¶10} Curlee-Jones argues that her passenger had the right to video the police, so the police had no right to seize the cell phone that allegedly contained the video. We must reject this argument because Curlee-Jones did not own the cell phone taken by the police. When a defendant is aggrieved by an allegedly illegal seizure of a third party's property, the Fourth Amendment rights of that defendant have not been infringed. *Rakas v. Illinois*, 439 U.S. 128, 134, 58 L.Ed.2d 387, 99 S.Ct. 421 (1978); *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). The facts show that Curlee-Jones only had temporary possession of the cell phone because its owner handed

the phone to her to keep it from the police. She had no privacy right in that cell phone, so she has no standing to argue that the police invalidly seized the cell phone.[1]

{¶11} Nevertheless, the evidence does not establish that Curlee-Jones tampered with evidence when she refused to hand the cell phone over to the police. She admittedly put the phone down the front of her shirt, but this was not an act of concealment in any ordinary sense of the word. The word "conceal" means to hide or keep from observation. *State v. Fussel*, 8th Dist. No. 95906, 2011-Ohio-4815, ¶ 17. Curlee-Jones put the phone down her shirt to keep the police from taking possession of it. That she did this in plain sight of the police proved that she was not hiding it, anymore than if she showed the police the phone before putting it behind her back. At all events, her intent as demonstrated by her actions was to keep the police from taking possession of the phone, the location of which was fully known to them. So at best, her actions might have been construed as obstruction of

---

[1] We are mindful that other issues, apart from Fourth Amendment issues, arise when the police seize cell phones or other camera-video devices from third parties who might have video or photographs of an incident stored on a digital device. The public has the right to take photographs or create video recordings from places where they have a right to be and that does not interfere with the safety of police officers. The police might justify seizure of a cell phone or other type of digital recording device on the legitimate belief that the item contains evidence proving that a suspect has resisted arrest or committed some other crime, and that exigent circumstances require the seizure of the video to prevent its destruction. On the other hand, those videos might also document police misconduct and those shooting the video may legitimately fear the confiscation of the video as "evidence" as a ruse to delete or destroy incriminating evidence. In addition, the owner of the cell phone may be highly inconvenienced by the seizure. And in this age of social media, we must acknowledge that digital recordings of police encounters might have a monetary value to the owner of the video — a value that is based on the newsworthiness and immediacy of what a person has recorded.

official business under R.C. 2921.31, but they were not tampering with evidence. The evidence was insufficient to sustain a conviction under R.C. 2921.12(A)(1).

III

{¶12} The two counts of assault were charged under R.C. 2903.13(A) and required the state to prove that Curlee-Jones knowingly caused or attempted to cause physical harm to the police officers on the scene. "Physical harm" means "any" injury regardless of its gravity or duration. R.C. 2901.01(A)(3).

{¶13} The facts showed that the police forcibly removed Curlee-Jones from her car after she refused to hand over the cell phone. One of the police officers, Barnes, testified that as he pulled her from her car, she began swinging her arms and hit him in the head. A second officer, McKay, testified that when Curlee-Jones had been forced to the ground, he tried to grab hold of her legs in an attempt to subdue her for handcuffing and that she resisted by kicking him about a dozen times. Neither officer testified to suffering any injury, so there was no proof of actual physical harm sufficient to establish an assault.

{¶14} In addition, there was no proof that Curlee-Jones acted knowingly to cause physical harm to the officers. She was plainly resisting arrest — a charge that she does not contest on appeal. The contact she made with the officers was part and parcel of that resistance. The state offered no evidence, apart from that which it used to establish the resisting arrest count, that her struggle with the officers contained a separate intent to knowingly cause or attempt to cause the officers physical harm. We thus find insufficient evidence to prove either count of assault.

# IV

{¶15} Prior to trial, the state asked the court to preclude Curlee-Jones from cross-examining the police officers on their knowledge of prior lawsuits against them alleging the use of excessive force and prior disciplinary action from one police officer's personnel file. She argued that the existence of prior excessive force suits against the arresting officers was admissible under (1) Evid.R. 404(A)(2) to show the police officers' lack of peacefulness and (2) Evid.R. 404(B) to show the police officers' possible motive or bias in their version of events. The court granted the state's motion in limine, finding that evidence of other civil lawsuits against the victim police officers was inadmissible, but did allow the defense to "inquire regarding issues to develop the pertinent trait of character under Evid.R. 404(A)(2)."

{¶16} In her appellate brief, Curlee-Jones appears to have abandoned any claim that the court violated the Rules of Evidence. Apart from recounting that trial counsel's opposition to the state's motion in limine rested on Evid.R. 404(A)(2), (A)(3), and (B)(1), she makes no independent argument relating to these rules of evidence, does not quote the wording of these rules, nor does she cite precedent relating to these rules.

{¶17} The only argument that Curlee-Jones makes on appeal is that the court violated her right to confrontation by granting the state's motion in limine because the officers' testimony as to how events "played out may have been viewed differently by the jury if the officers had been cross-examined as to their knowledge of potential liability for excessive use of force."

{¶18} "The right to cross-examination, protected by the Confrontation Clause, thus is essentially a 'functional' right designed to promote reliability in the truth-finding functions of a criminal trial.'" *Kentucky v. Stincer*, 482 U.S. 730, 737, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). The right is not absolute and guarantees a party nothing more than "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis sic.). Importantly, the trial judge is required to strike a balance between the opportunity to cross-examine and the need to prevent repetitive or abusive cross-examination. *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223 (8th Dist.), ¶ 65. The trial judge thus has wide discretion to exclude testimony that poses an undue risk of confusion of the issues or that is only marginally relevant. *Holmes v. South Carolina*, 547 U.S. 319, 327, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).

{¶19} We cannot say that the court acted unreasonably by refusing to allow cross-examination of the officers on questions concerning their involvement in prior excessive force lawsuits. First, it was unclear to what extent Curlee-Jones could show that the officers had previously engaged in the use of excessive force. She pointed the court to two different federal court actions involving the officers, but offered nothing more than that "at least a couple of the officers had previously had Federal lawsuits against them where their qualified immunity was not upheld. In other words, the case went beyond the qualified immunity stage." Journal entries from those cases showed

that they had been settled and dismissed, but there was no indication that liability had been confessed in those settlements nor could liability be implied only from settlement. This meant that Curlee-Jones offered only speculation regarding past instances of excessive force. The court could rationally find that allegations of past excessive force were not enough to warrant cross-examination under the circumstances.

{¶20} Second, the court could rationally find that allowing cross-examination on issues of prior allegations of excessive force by the officers would have caused the jury unnecessary confusion over the legal issues because it would put the officers on trial. In Section 1983 cases alleging a police officer's use of excessive force, substantiated allegations of that officer's prior use of unlawful or excessive force could arguably furnish the defense with Evid.R. 404(B) evidence of the officer's motive or intent to cause harm and provide exculpatory support for a theory of self-defense. *See, e.g.*, *O'Neill v. Krzeminski*, 839 F.2d 9, 11, fn.1 (2d Cir.1988) (officer's prior use of excessive force admissible under Fed.R.Evid. 404(b) to show an "aggravated state of mind"); *Eng v. Scully*, 146 F.R.D. 74, 80 (S.D.N.Y. 1993) (plaintiff in an excessive force case entitled to prove by extrinsic evidence of other instances that police officer defendant acted maliciously and sadistically for purpose of causing harm). But this was not a Section 1983 excessive force action and as we have noted, Curlee-Jones did not offer substantiation that the officers engaged in the prior use of excessive force. What is more, it is unclear how the officers' prior use of excessive force would be relevant to explain their "motive" in arresting Curlee-Jones.

**{¶21}** Third, we have found no abuse of discretion when a trial judge refused to allow the defendant to use an official reprimand from a police officer's personnel file to impeach the officer or otherwise test his credibility under Evid.R. 608(B). *See, e.g.*, *State v. Hairston*, 8th Dist. No. 69821, 1996 Ohio App. LEXIS 3557 (Aug. 22, 1996); *State v. Benjamin*, 8th Dist. No. 87872, 2007-Ohio-84, ¶ 19. Evid.R. 608(B) states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *.

**{¶22}** Evidence of the prior excessive force lawsuits would be extrinsic evidence and not allowed. *See In re D.B.*, 2d Dist. No. 20979, 2005-Ohio-5583, ¶ 59. Moreover, "[t]he fact that the officer had used excessive force in another case was a 'specific instance * * * of the conduct of a witness,' but it was not probative of his truthfulness." *United States v. Seymour*, 472 F.3d 969 (7th Cir.2006). It follows that Curlee-Jones did not assert a viable basis to cross-examine the officers on prior instances of excessive force.

V

**{¶23}** Finally, Curlee-Jones argues that the court erred by refusing to allow her to introduce Cleveland Police Department policy regarding a citizen's right to use cell phones to record police actions. She claims that the police had no right to seize the cell phone as evidence, so the cell phone itself was not truly evidence and she should not have

been convicted of tampering with evidence. In light of our resolution regarding the charge of tampering with evidence, we need not address this assigned error.

VI

{¶24} In conclusion, we find the evidence insufficient to sustain a conviction on the single count of tampering with evidence and the two counts of assault. We therefore reverse with instructions for the court to vacate those convictions.

{¶25} Judgment reversed.

It is ordered that appellant recover of appellee her costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, ADMINISTRATIVE JUDGE

KENNETH A. ROCCO, J., and
EILEEN A. GALLAGHER, J., CONCUR