[Cite as *State v. Wacasey*, 2025-Ohio-1257.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                         No. 114144

    v.                                   :

MONTANA WACASEY,                        :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 10, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-686061-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Morgan Austin, Assistant Prosecuting Attorney, *for appellee.*

Langdon Legal, LLC, and Liza Marie Langdon, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Montana Wacasey appeals her conviction for assault committed against a police officer. The conviction arose from what should have been a routine traffic stop to issue a traffic citation after a Case Western Reserve University

("CWRU") police officer witnessed the driver of a Mercedes SUV, Wacasey, fail to stop when required by a traffic signal. Ultimately, Wacasey was arrested for failure to identify herself for the purpose of issuing the traffic citation. In the process of resisting that arrest, Wacasey bit and kicked at the officers, one of whom sought medical treatment for pain in his groin. For the following reasons, we affirm the conviction.

{¶ 2} Wacasey failed to stop at an intersection controlled by either a stop sign or stoplight. After the officer activated his emergency lights and attempted to initiate a traffic stop, the driver continued driving a circuitous route to a nearby residence, including leading the officer through the parking lot and ATM lane of a local bank. The officer immediately requested support and notified area units that the driver was potentially running. It does not appear that the officer could see the driver, referring to the driver as a male in his discussions with dispatch. The vehicle was ultimately stopped in the driveway of the residential property where Wacasey's aunt lived, with the back of the car sticking out into the street. Wacasey exited the Mercedes SUV, walked to the doorstep, but turned and approached the officer's cruiser on the driver's side. That was noted to be a dangerous situation for an officer and a motorist to be in, given the dangers officers face when sitting in their vehicles as unknown individuals approach them. The officer broadcast what was happening while exiting his vehicle, and other officers immediately arrived in light of the nature of the stop and encounter.

{¶ 3} Wacasey was immediately combative, questioning the officer. In the midst of that, the officer misspoke and stated that he was trying to issue a citation because he witnessed Wacasey fail to comply with three stoplights. As the officer conceded, that was an imprecise phrasing. In actuality, it was some combination of stop signs and stoplights. In short, she was being stopped for failing to stop when required by a traffic-control device. Wacasey became fixated on the misstatement and began questioning the entire interaction by refusing to identify herself or hand the officer her driver's license. Her reluctance could also be attributed to the fact that Wacasey was driving under a suspended license, a fact not known to the officers until later.

{¶ 4} Not long after the initial interaction, the officer's supervisor, a sergeant with the CWRU Police Department, arrived. He advised the officer to issue the citations by running the license plate on the Mercedes SUV and told other responding officers to depart, believing that the ticket would be issued. It was discovered, however, that the license plate was registered to a different vehicle, a Kia titled to a different person. Wacasey confirmed the plate was invalid as the officer was attempting to write the citations. It is not clear whether Wacasey owned the Mercedes SUV. She made comments about intending to purchase the vehicle and was simply driving it around the block.

{¶ 5} A lieutenant for the CWRU Police Department arrived and was briefed by the officers. Wacasey refused every officer's request to produce her identification or to simply identify herself for the purpose of issuing the citation.

They attempted to obtain the information from Wacasey's aunt, who also declined to identify Wacasey. Thirty minutes into the detention, after being told repeatedly that the failure to identify herself was an arrestable offense given the nature of the encounter, Wacasey attempted to walk back inside the house. The lieutenant made the instantaneous decision to arrest Wacasey before she could retreat inside the home.

{¶ 6} As he attempted to place handcuffs on Wacasey, she went "limp," or slumped to the ground. During this time, Wacasey actively prevented the officers from placing her in handcuffs. As the struggle ensued, she was kicking at and attempting to bite at least one of the officers according to their testimony. Body camera footage depicts the officers telling her to stop kicking and biting, but the view of the arrest is unclear because some of the cameras fell to the ground during the struggle to cuff Wacasey. Eventually, she was in custody, but after being placed in the back of the police car, Wacasey's aunt opened the door and Wacasey attempted to exit the vehicle. The lieutenant went to secure her once again but later testified that it was difficult because Wacasey was kicking at him.

{¶ 7} When returning to the station, the first officer started to feel pain in his groin causing him enough distress to warrant an emergency room visit. Upon discharge, he was advised to stay home for a couple of days before returning to work. The officer testified that in addition to Wacasey's attempt to bite him, she was actually biting his protective vest, and that Wacasey had kicked him in the groin.

{¶ 8} Before trial, Wacasey rejected the State's offer to plead guilty to a misdemeanor assault charge. Nevertheless, upon that evidence, the trial court sitting as the trier of fact found Wacasey guilty of assault under R.C. 2903.13(A), a fourth-degree felony offense when committed against a police officer. R.C. 2903.13(C)(5)(a). According to the trial court, "[t]he long and short of it . . . is that [Wacasey] did act knowingly when [she] kicked [the officer] and bit him, as well. Those are knowing acts, and therefore the State has met their burden in this case." (Tr. 157:22-158:2.) She was sentenced to one and a half years of community-control sanctions, and this timely appeal followed.

{¶ 9} Wacasey advances three assignments of error, two of which are related. In the first assignment of error, Wacasey claims her conviction for assault is based on insufficient evidence of her knowingly causing physical harm. According to Wacasey, although she was "actively" resisting arrest, she did not intend to kick or injure any of the officers. Although she couches her second assignment of error in terms of challenging the denied motion for acquittal under Crim.R. 29, the analysis is the same. *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶ 10} When determining whether a verdict is supported by sufficient evidence, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Wilks*, 2018-Ohio-1562, ¶ 156, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. When evaluating the sufficiency of the evidence, a reviewing

court considers "whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *Jenks* at paragraph two of the syllabus.

{¶ 11} There are two overriding considerations that must be addressed with Wacasey's trial and appellate strategy. Throughout this case, Wacasey has never contested the lawfulness of the initial stop and detention or the legitimacy of the arrest for failing to identify herself during a lawful traffic stop. Instead, Wacasey's defense was focused on whether she intentionally or purposefully kicked or bit the police officer based on her subjective intent and whether there was any actual physical harm suffered by the officers. Both arguments generally overlook the plain language of R.C. 2903.13(A), which provides that "[n]o person shall *knowingly* cause or *attempt* to cause physical harm to another." (Emphasis added.)

{¶ 12} The State did not need to prove that the officers were actually harmed, only that Wacasey attempted to cause physical harm. *See In re G.K.*, 2022-Ohio-2124, ¶ 19 (5th Dist.). Wacasey, however, does not present any arguments challenging whether her conduct constituted an attempt to cause physical harm. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 19, citing *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part); App.R. 16(A)(7). Because actual harm is but one part of the harm element of R.C. 2903.13(A), we need not focus on whether any officer was actually harmed, only whether Wacasey's actions constituted an attempt to cause physical harm, which is a broadly defined term. Further, "knowingly" is not defined as an intentional or

purposeful action. "[A] person acts knowingly, *regardless of purpose*" and therefore regardless of intent, "when the person is aware that [their] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." (Emphasis added.) R.C. 2901.22(B).

{¶ 13} As a result of that plain and unambiguous language of the statute, it has been concluded that "assault does not require that a defendant intend to cause physical harm, but 'only requires that the defendant acted with awareness that the conduct probably will cause such harm.'" *State v. Pierce*, 2023-Ohio-528, ¶ 24 (8th Dist.), quoting *State v. Lucas*, 2021-Ohio-2721, ¶ 21 (11th Dist.), *State v. Skjold*, 2004-Ohio-5311, ¶ 24 (11th Dist.), and *State v. Lloyd*, 2021-Ohio-1808, ¶ 51 (8th Dist.). From that starting point, it has long been held that potential or actual harm caused to officers by a defendant "'flailing' to evade arrest is sufficient to support a conviction for knowingly causing harm or attempting to cause harm." *Id*. at ¶ 26, citing *State v. Jones*, 2003-Ohio-3004, ¶ 57 (8th Dist.) ("[B]y refusing to comply with police orders and submit to their authority when he was placed in the cruiser, the appellant possessed the requisite knowledge that his conduct, as demonstrated by his resistance, kicking, head butting, shoulder butting and flailing about, would probably cause a certain result."); *see also In re M.H.*, 2021-Ohio-1041, ¶ 45 (1st Dist.); *State v. Munoz*, 2013-Ohio-4987, ¶ 12 (10th Dist.) ("[w]hen flailing one's arms while in close proximity to another, it is probable that one will strike the other" and cause injury), citing *State v. Trikilis*, 2005-Ohio-4266 (9th Dist.); *State v.*

*Standifer,* 2012-Ohio-3132 (12th Dist.) (concluding that the State only had to "establish that appellant was aware that 'flailing' and kicking her foot backwards would probably cause" the officer harm, it did not need to prove an intentional act).

{¶ 14} The act of intentionally "flailing" one's limbs in close proximity to officers attempting to effectuate a lawful arrest is a knowing act. *Standifer* at ¶ 25, citing *State v. Nutekpor,* 2006-Ohio-4641, ¶ 15 (6th Dist.), citing *State v. Edwards,* 83 Ohio App.3d 357, 361 (10th Dist. 1992). Common sense dictates that intentionally swinging arms or kicking feet when others are in or near the path of the flailing limb probably will result in physical harm to the other person. It is no different than intentionally discharging a firearm with no intent to actually harm anyone. Regardless of the shooter's subjective intent, under the letter of the law, the shooter committed the act knowingly. *See State v. Wilson,* 2024-Ohio-776, ¶ 24 (string citing cases establishing that "[i]ntentionally shooting toward or in the vicinity of another person when there is a risk of injury satisfies the 'knowingly' element of felonious assault").

{¶ 15} Wacasey argues that although she was intentionally resisting arrest, her "physical transgressions" against the officers were not knowingly committed. She claims that her intentional "flailing about" was "part and parcel" of that resistance and nothing more, citing *State v. Santiago-Dennis,* 2014-Ohio-4204, ¶ 27 (8th Dist.), and *State v. Curlee-Jones,* 2013-Ohio-1175 (8th Dist.). Wacasey, however, makes no attempt to distinguish *Jones,* 2003-Ohio-3004, or *Pierce,* 2023-Ohio-528. There is no dispute that she intentionally kicked or flailed her legs when

the officers were in close proximity to effectuate the arrest or intentionally bit one of the officers during the arrest. That is dispositive for the purposes of the sufficiency analysis. But nevertheless, both *Santiago-Dennis* and *Curlee-Jones* are distinguishable based on the disconnect between those panels' stated rationales and the statutory language codified in R.C. 2903.13(A).

{¶ 16} *Santiago-Dennis* relies on the improper mens rea in reversing a conviction for assault committed against a police officer under R.C. 2903.13(A). In that case, the defendant was acting erratically at a bus stop, kicking and punching a street sign, yelling "fight club" with several other riders present. *Id.* at ¶ 4. An officer approached the defendant and obtained his identification. *Id.* at ¶ 5. When returning the license, the defendant made a gesture consistent with potentially drawing a weapon from his pocket. *Id.* at ¶ 6. Two officers went to secure the defendant who began "flailing" about with "closed fists" and striking the officers several times. *Id.* at ¶ 7. One of the officers had his finger dislocated in the struggle. *Id.* at ¶ 8.

{¶ 17} In vacating the conviction for assault committed against a police officer, the panel concluded that there was no testimony that the defendant's action "was deliberate or purposeful" or that the defendant's "flailing of the hands was a purposeful attempt to strike" the officers, and therefore, the injuries caused to the officers were "merely incidental to his attempt to resist being arrested." *Id.* at ¶ 25. Thus, and despite citing R.C. 2903.13(A) and the "knowingly caused or attempted to cause" language, the panel substituted the mens rea of knowingly with a purposeful

or deliberate standard in reversing the conviction. *Id.* at ¶ 23. We cannot rely on that panel's conclusion without ignoring the elements of assault under R.C. 2903.13(A). That case must be construed as providing limited precedential value in light of the conflict with the statutory language.

{¶ 18} *Curlee-Jones* follows a similar path. There, the defendant actively resisted an arrest by intentionally flailing or kicking at the arresting officers after she was arrested for dragging a police officer with her car after he attempted to lean into the car to secure something from a passenger. *Id.* at ¶ 6. In concluding that there was insufficient evidence sustaining the assault conviction under R.C. 2903.13(A), the panel concluded that there was "no proof of *actual* physical harm sufficient to establish an assault." (Emphasis added.) *Id.* at ¶ 13. This conclusion also disregarded the language of R.C. 2903.13(A) that criminalizes the act of causing or *attempting* to cause any physical harm. It is hard to imagine that dragging a person hanging outside a car would not suffice. Regardless, actual harm is not a prerequisite as *Curlee-Jones* indicated. The panel's alternative conclusion — that "there was no proof that Curlee-Jones acted knowingly to cause physical harm to the officers" because the "contact she made with the officers was part and parcel of that resistance" — conflicted with established precedent.

{¶ 19} Before *Curlee-Jones*, a panel from this district reached the opposite conclusion. *See Jones*, 2003-Ohio-3004. In *Jones*, the conviction for assault committed against a police officer under R.C. 2903.13(A) stemmed from the defendant "kicking and pushing at" the police officer during a lawful arrest and

causing the door of the police car to slam on one of the officer's hands, all part of the defendant's active resistance to the arrest. *Id.* at ¶ 10. The defendant argued that the State "did not prove that he possessed the mens rea of 'knowingly' to commit this crime of assault." He argued that the crime of assault requires proof of an intent or purposeful act with the knowledge that the officer would be injured. *Id.* at ¶ 56. The panel rejected that argument, expressly concluding that by refusing to comply with police orders and submit to their lawful authority, the State demonstrated the defendant's knowledge that his conduct, kicking, head butting, shoulder butting, and flailing about, could probably cause injuries to the arresting officers sufficient for the purposes of R.C. 2903.13(A). *Id.* at ¶ 57.

{¶ 20} We cannot rely on either of the conclusions reached by the panel in *Curlee-Jones*. One conflicts with the unambiguous language of R.C. 2903.13(A) in failing to address the "attempt" aspect of the statute, and the other cannot be reconciled with *Jones*. *See also Pierce*, 2023-Ohio-528, at ¶ 24.

{¶ 21} In this case, the State presented evidence that Wacasey intentionally kicked at and bit at least one of the officers in her attempt to resist the otherwise lawful arrest. The act of biting the officer is sufficient to demonstrate a knowing attempt to cause physical harm. That no harm was actually caused because of the officer's protective vest is immaterial. And importantly, R.C. 2901.01(A)(3) defines the phrase "[p]hysical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." An attempt to bite an arresting officer alone satisfies the elements of assault, demonstrating an attempt to cause

physical harm. *See State v. Workman*, 2009-Ohio-2995, ¶ 11 (9th Dist.) (testimony demonstrating that the defendant bit the arresting officers sufficient to sustain the conviction for assault under R.C. 2903.13(A)).

{¶ 22} Beyond that, her actions in kicking at the officers were demonstrated to be knowingly done. Wacasey admits she intentionally flailed about, or kicked her legs, to actively resist the lawful arrest. In addition, several times throughout the encounter Wacasey was told by officers to stop kicking them. That demonstrates knowledge on her part that her conduct could cause injury to the officers who were in close proximity to her legs and arms in the attempt to secure the handcuffs. Whether one believes that the officer was actually injured by the kick to the groin, at the least, it is reasonable to conclude that Wacasey knowingly attempted to cause physical harm by attempting to bite and kick at the officers. *See, e.g., State v. Williams*, 2023-Ohio-3246, ¶ 51 (8th Dist.) (evidence demonstrating that defendant actively resisted an arrest and then bit the officer sufficient to sustain assault conviction as committed against a police officer). The first two assignments of error are overruled.

{¶ 23} In the final assignment of error, Wacasey claims her conviction is against the weight of the evidence based on some inconsistencies between the officers' trial testimony and the unclear body-camera footage.

{¶ 24} When evaluating a claim that a verdict is against the manifest weight of the evidence, "we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving

conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 25} Although Wacasey challenges the credibility of the officers' testimony and the evidence that was provided, this is not the exceptional case in which the evidence weighs heavily against the conviction. Wacasey's focus is on the evidence (a) pertaining to when the officer first felt pain in his groin from being kicked; (b) that the officers differently described how she fell to the ground during the arrest (went limp, fell, or tensed up); or (c) that the body-camera recordings were missing information because the cameras fell off the officers during their struggle to place Wacasey in handcuffs. None of those discrepancies rise to the level of demonstrating a manifest miscarriage of justice.

{¶ 26} Because the evidence demonstrates that Wacasey bit and kicked at the officers, there is credible evidence that she, at the least, attempted to cause physical harm to the officers who were effectuating a lawful arrest. Wacasey has not generally contested the gravamen of the underlying facts. Her main focus is on her subjective intent and minor differences in how the events were described. The final

assignment of error is overruled. This is not the exceptional case warranting appellate intervention.

{¶ 27} Wacasey's conviction for assault is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHAEL JOHN RYAN, P.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION),
KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY

MICHAEL JOHN RYAN, P.J., CONCURRING IN JUDGMENT ONLY:

{¶ 28} Respectfully, I concur in judgment only. I believe that the evidence is sufficient to sustain the assault on a police officer conviction only as it relates to Wacasey's attempt to bite one of the officers; I agree with the majority that Wacasey acted knowingly with that conduct. I would not find that Wacasey acted knowingly by kicking while the police were attempting to handcuff her; rather, I believe that conduct was part and parcel of Wacasey's resisting arrest. Therefore, I would follow

this court's decisions in *State v. Santiago-Dennis*, 2014-Ohio-4204 (8th Dist.), and *State v. Curlee-Jones*, 2013-Ohio-1175 (8th Dist.).

{¶ 29} I do agree with the majority that, because of Wacasey's trial and appellate strategy, the lawfulness of the initial stop, the detention, and the arrest for Wacasey's failure to identify herself are not at issue in this appeal.

{¶ 30} For the reason stated herein, I respectfully concur in judgment only.