OPINION
{¶ 1} D.B., a minor child, appeals from his delinquency adjudication and commitment to the Ohio Department of Youth Services by reason of having committed complicity to commit felonious assault, with a firearm specification, and receiving stolen property.
 {¶ 2} On February 5, 2004, Ronald Lasko, a nuclear medicine specialist for Siemens, was staying overnight at the Residence Inn motel in Troy. Lasko's vehicle, a 2004 black Dodge Intrepid with Pennsylvania plate number FDF 2823, was stolen from the parking lot.
 {¶ 3} On February 10, 2004, two off-duty Dayton police officers, Patrick Bucci and Tiffany Conley, were at Starbucks coffee on Brown Street near the University of Dayton. When they left Starbucks, Conley drove Bucci to where his truck was parked near the alley behind his residence at 1924 Brown Street. The alley runs parallel to Brown Street between Irving and Lowes Street, behind some shops and restaurants. Before they parted company Bucci and Conley kissed. At that moment the black Dodge Intrepid stolen from the Troy motel parking lot came down the alley past the officers. Someone inside the Intrepid yelled, "Can I get next," which was unintelligible to the officers.
 {¶ 4} Bucci exited Conley's vehicle and stood next to the passenger door as he watched the Intrepid continue down the alley, turn around, and come back toward the officers. As the Intrepid passed by Bucci, he spit in the general direction of that vehicle. The Intrepid stopped in front of Conley's vehicle and the driver, identified by both Bucci and Conley as D.B., asked Bucci if he had spit on his car. Not clearly hearing what D.B. had said, Bucci asked D.B. to repeat his remark. D.B. mumbled something Bucci could not understand, and Bucci told D.B. to just keep going.
 {¶ 5} According to one of the other occupants in the Intrepid, Kevin Johnson, Bucci used a racial slur when he told the driver to keep going. At that point, D.B. opened up his jacket and showed Bucci that he was armed with a silver semi-automatic handgun in a shoulder holster. In response, Bucci drew his gun, pointed it at D.B.'s head and said "You need to get the f____ out of here." The Intrepid then drove off down the alley and turned onto Lowes Street.
 {¶ 6} Bucci walked over to the driver's side of Conley's vehicle and told her what had just happened. Seconds later, Bucci saw the Intrepid reappear where the alley meets Irving Street. The passenger window was rolled down. Bucci saw a muzzle flash and heard a gunshot come from the passenger window of the Intrepid. Bucci heard the bullet whistle past his head. Bucci dove to the ground and heard two more shots fired, one of which made a pinging sound when it struck Conley's vehicle. After the Intrepid sped off, Bucci checked on Conley, who was not injured, and then Bucci called 911. Evidence crews recovered three spent shell casings and two spent bullets at the scene. One bullet was found on the front seat of Conley's vehicle near where her head was when she dove down onto the passenger seat as the gunshots began.
 {¶ 7} The following day police found the stolen black Dodge Intrepid driven in the shooting. The left side of the steering column was damaged in a way consistent with the vehicle having been started without a key. D.B.'s fingerprints were found inside the vehicle.
 {¶ 8} On February 15, 2004, Dayton police stopped a vehicle driven by Kevin Johnson for a traffic violation. D.B. was a passenger in the vehicle. Because of furtive movements by the occupants, police searched that vehicle and discovered a loaded 9mm Jennings semi-automatic handgun under the passenger seat where D.B. had been sitting. The gun appeared to have been recently fired. D.B.'s fingerprint was found on the magazine of that gun. Laboratory testing revealed that the gun was used to fire the spent casings and bullets recovered from the shooting scene in the alley near Brown Street.
 {¶ 9} D.B. was charged by a complaint filed in Montgomery County Juvenile Court with being delinquent by reason of having committed two counts of complicity to commit felonious assault, R.C. 2923.03(A)(2) and2903.11(A)(2), and one count of receiving stolen property, R.C. 2913.51(A). A firearm specification, R.C. 2941.145, was attached to each count of complicity to commit felonious assault.
 {¶ 10} An adjudicatory hearing was held before a magistrate on May 4, 18, and 20, 2004. At the hearing, D.B. and Kevin Johnson both admitted being present inside the Intrepid during the shooting, but they claimed that Terrance Gay, not D.B., was driving and that Gay fired the shots. Following the hearing D.B. was found delinquent by reason of having committed all of the offenses charged. The magistrate subsequently sentenced D.B. to concurrent terms of commitment to the Ohio Department of Youth Services for a minimum of one year on each count of complicity to commit felonious assault, and six months for receiving stolen property. The magistrate also imposed one additional and consecutive one year term on the firearm specifications, for a total sentence of two years minimum.
 {¶ 11} Defendant timely filed objections to the magistrate's adjudication and disposition. On February 16, 2005, the juvenile court overruled Defendant's objections and adopted the magistrate's decision.
 {¶ 12} Defendant has timely appealed to this court.
FIRST ASSIGNMENT OF ERROR
 {¶ 13} "THE TRIAL COURT VIOLATED D.B.'S RIGHT TO DUE PROCESS UNDER THEFIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HIM DELINQUENT OF TWO COUNTS OF FELONIOUS ASSAULT, EACH WITH A FIREARM SPECIFICATION, WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 15} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 16} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 17} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 18} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 19} Defendant argues that the finding of delinquency by reason of having committed felonious assault is against the manifest weight of the evidence because he was merely present at the shooting scene and in close proximity to the actual shooter, and the evidence fails to prove that he aided or abetted the shooting. We disagree.
 {¶ 20} Ohio's complicity statute, R.C. 2923.03, provides, in pertinent part:
 {¶ 21} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 22} * * *
 {¶ 23} "(2) Aid or abet another in committing the offense."
 {¶ 24} D.B. was found delinquent by reason of having committed felonious assault in violation of R.C. 2903.11(A)(2):
 {¶ 25} "(A) No person shall knowingly do either of the following:
 {¶ 26} * * *
 {¶ 27} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 28} Knowingly is defined in R.C. 2901.22(B):
 {¶ 29} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 30} The State did not claim that D.B. was the person who shot at Officers Bucci and Conley. Rather, the State alleged that D.B. aided and abetted that shooting in two ways: (1) D.B. drove the vehicle used in the shooting and positioned it in such a way that the shooter could fire at the officers, and (2) D.B. possessed the gun used in the shooting and he allowed the shooter to use his gun to shoot at the officers.
 {¶ 31} In State v. Johnson, 93 Ohio St.3d 240, 2001 Ohio-1336, the Ohio Supreme Court stated that in order to support a conviction for complicity by aiding and abetting, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised or incited the principal offender, and that the defendant shared the criminal intent of the principal offender, which may be inferred from the facts and circumstances surrounding the crime.
 {¶ 32} Both Officer Bucci and Officer Conley identified D.B. as the driver of the black Dodge Intrepid, and Bucci testified that D.B. carried a gun. The evidence shows that the Dodge Intrepid was then a short distance away to where the vehicle was positioned in such a manner that the open passenger window was facing the officers. Shots were then fired from that open passenger window at them. Five days later during a traffic stop, a gun was discovered underneath the passenger seat where Defendant had been sitting. Laboratory analysis confirmed that the gun had been used in this shooting. Defendant's fingerprints were on the magazine of that gun. Clearly, this evidence, if believed, shows that D.B. was not merely present at the scene of the shooting or a mere observer or innocent bystander.
 {¶ 33} In arguing that the evidence fails to demonstrate that he aided and abetted this shooting, D.B. points to his testimony and that of Kevin Johnson, indicating that Terrance Gay was the person driving the Dodge Intrepid that night and Gay is the person who had the gun and shot at the officers. This version of the events conflicts with the testimony of Officers Bucci and Conley. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts, the trial court here, to resolve. State v. DeHass, supra. The trial court did not lose its way simply because it chose to believe the officers rather than D.B. or his witnesses, which it was entitled to do.
 {¶ 34} D.B. additionally argues that his delinquency adjudication for felonious assault is against the manifest weight of the evidence because the actions of the shooter constitute aggravated assault, not felonious assault. D.B. claims that the shooter acted in a sudden fit of rage after being provoked and taunted by Officer Bucci, who spit in the direction of the Dodge Intrepid, used a racial slur when referring to the driver, and pointed a gun at the head of the driver and told him to "get the f____ out of here." According to D.B., this was serious provocation that was reasonably sufficient to enrage the driver and incite him into using deadly force. We are not persuaded.
 {¶ 35} The elements of felonious assault, R.C. 2903.11, and aggravated assault, R.C. 2903.12, are identical except for the mitigating factor of serious provocation found in aggravated assault. State v. Deem (1988),40 Ohio St.3d 205. That mitigating factor requires that Defendant act under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force. R.C. 2903.12. Defendant has the burden of proving the mitigating factor by a preponderance of the evidence. Deem, supra.
 {¶ 36} In State v. Shane (1992), 63 Ohio St.3d 630, the Supreme Court elaborated on what constitutes reasonably sufficient provocation to incite the defendant into using deadly force. First, an objective standard is applied to determine whether the alleged provocation is sufficient to arouse the passions of an ordinary person beyond the power of his or her control. If that objective standard is met, the inquiry shifts to a subjective standard to determine whether the Defendant in the particular case actually was under the influence of sudden passion or in a sudden fit of rage. Ordinarily, words alone will not constitute reasonably sufficient provocation to incite the use of deadly force. Id.
Neither will past incidents or verbal threats satisfy the test for reasonably sufficient provocation when there has been sufficient time for cooling off. State v. Mack, 82 Ohio St.3d 198, 1998-Ohio-375. Moreover, fear alone is insufficient to demonstrate sudden passion or fit of rage.Id.
 {¶ 37} First, we note that this claim by D.B. is premised upon the proposition that Terrance Gay was the person driving the Dodge Intrepid who had words with Officer Bucci and had the gun and fired shots at the officers. By its verdict, however, it is clear that the trial court disbelieved that version of the events and instead believed Officers Bucci and Conley who indicated that D.B. was the driver and the person who had the gun.
 {¶ 38} Whatever words were exchanged between Officer Bucci and the driver of the Dodge Intrepid, words alone were not reasonably sufficient provocation to incite the use of deadly force. Shane, supra. In that regard, we note that Officer Bucci denied using any racial slurs when speaking to the driver. Moreover, it was only after the driver of the Intrepid pulled his coat back and showed Officer Bucci that he was armed with a semi-automatic handgun that Bucci then drew his weapon and pointed it at the driver, in response to a threat to his and Officer Conley's safety. If anything, it was the driver who provoked Officer Bucci to act as he did. When Bucci told the driver to "get out of here," the driver complied and drove away.
 {¶ 39} At oral argument the State conceded, and we agree, that a defendant who invokes a "serious provocation" claim need not be wholly free of any responsibility for causing the provocation to occur. Nevertheless, for R.C. 2903.12 to apply, the seriousness of the provocation that occurs must be reasonably sufficient to incite the defendant into using deadly force, and the defendant must actually have acted under the influence of a sudden passion or fit of rage that was provoked by the victim of the deadly force he used. Shane.
 {¶ 40} Officer Bucci's two acts that were undisputed and that allegedly caused the shots to be fired — spitting on the other vehicle and holding a gun to the driver's head — were, together, seriously provocative. However, before the shots were fired that encounter had concluded and Defendant and his companions left the scene. The trial court could reasonably find that the Defendant failed to meet his burden to show that when he and his companions returned to the alley and used deadly force that they or the shooter were actually under a sudden passion or fit of rage. Rather, under the circumstances, the court could conclude that they were instead motivated by a strong desire for retribution, which is not a mitigating matter for purposes of R.C. 2903.12. Therefore, we cannot find that the juvenile court's rejection of aggravated assault as a lesser included offense was against the manifest weight of the evidence for purposes of Defendant's delinquency adjudication.
 {¶ 41} Lastly, D.B. argues that his finding of delinquency by reason of having committed receiving stolen property is against the manifest weight of the evidence because the evidence does not demonstrate that D.B. knew or had reasonable cause to believe that the Dodge Intrepid he was riding in was stolen. Once again we disagree.
 {¶ 42} D.B. was found delinquent for having violated R.C. 2913.51(A), which provides:
 {¶ 43} "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 44} Officer Bryant testified that the Dodge Intrepid had a half inch wide crack on the left side of the steering column that was consistent with the vehicle having been started without a key. There was no damage to the ignition and the ignition ring was still intact. Bryant further testified that a person seated in the passenger seat would probably not be able to see the damage to the steering column. Based upon that testimony, and his own assertion that he was sitting in the passenger seat of the Dodge Intrepid on the night of the shooting, D.B. argues that the evidence does not prove that he knew or had reason to know that the Dodge Intrepid was stolen.
 {¶ 45} As we previously pointed out, the trial court by its verdict rejected the contentions of D.B. and his witness that Terrance Gay, and not D.B., was the driver of the Intrepid and possessed the gun. Instead, the trial court believed the testimony of Officers Bucci and Conley that D.B. was the driver of the Intrepid. Given that evidence, along with other evidence demonstrating that the vehicle had been stolen from the Residence Inn motel in Troy, and that the steering column was damaged in a way consistent with the vehicle being started without a key, and the fact that D.B.'s possession of that stolen vehicle was completely unexplained, D.B.'s delinquency adjudication based upon receiving stolen property is not against the manifest weight of the evidence.
 {¶ 46} In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the trial court lost its way, or that a manifest miscarriage of justice has occurred. D.B.'s delinquency adjudication for having committed complicity to commit felonious assault and receiving stolen property is not against the manifest weight of the evidence.
 {¶ 47} D.B.'s first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 48} "D.B. WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."
 {¶ 49} In order to demonstrate ineffective assistance of trial counsel, Defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 50} Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. Id.
Moreover, hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.
 {¶ 51} Defendant first argues that his trial counsel's performance was deficient because counsel failed to object to the magistrate's delinquency adjudication and the issues raised during that adjudication, thereby precluding appellate review of those matters. See: Juv.R. 40(E)(3)(d).
 {¶ 52} A review of this record clearly demonstrates that D.B.'s trial counsel did timely file objections and later supplemental objections to the magistrate's decision, raising the issues now presented in D.B.'s first assignment of error in this appeal. We further note, as the State points out in its brief, that D.B. fails to identify what specific objection to the magistrate's decision his trial counsel should have but did not raise. Only after the State pointed this fact out in its brief did D.B. then claim, in his reply brief, that his trial counsel should have objected to his delinquency adjudication for receiving stolen property, based on the weight of the evidence probative of the charge.
 {¶ 53} That issue, whether D.B.'s delinquency adjudication for receiving stolen property is against the manifest weight of the evidence, was raised and addressed by this court as part of the first assignment of error, we concluded that the court's decision was not against the manifest weight of the evidence. Accordingly, D.B. has failed to demonstrate prejudice resulting from counsel's failure to raise this specific issue in his objections to the magistrate's decision.
 {¶ 54} Next, D.B. contends that his trial counsel performed deficiently because he failed to secure the testimony of a favorable defense witness, or at least request a continuance in order to try and locate that witness. Charley Connors, the witness, was subpoenaed by the defense but failed to appear at trial.
 {¶ 55} In a statement made to police, Connors indicated that he saw the black Dodge Intrepid drive by him on the night of the shooting, but he was unable to identify any of the occupants or even say how many occupants were inside that vehicle. All Connors could say was that the driver and passenger were both young black males, and the driver had on all black and the passenger wore a red knit hat.
 {¶ 56} Contrary to D.B.'s assertion, Connors' clothing description does not corroborate Kevin Johnson's and D.B.'s testimony or bolster their credibility because they both testified that the hat D.B. wore was brown. Defense counsel indicated to the trial court that as a tactical matter he did not desire a continuance of the trial already in progress in order to try and locate Connors, who was apparently now somewhere in New Jersey.
 {¶ 57} We are satisfied from the evidence that Connors' testimony would have been only marginally helpful to the defense, if at all. Connors' statement concerning the clothing worn by the vehicle's occupants was somewhat inconsistent with the testimony of Kevin Johnson and D.B., but did not discredit in any way the identification or testimony by Officers Bucci and Conley. Clearly, we cannot say on the state of this record that but for defense counsel's failure to secure the testimony of this witness, there exists a reasonable probability that the court would not have found D.B. delinquent for having committed felonious assault. Ineffective assistance of counsel has not been demonstrated.
 {¶ 58} Finally, D.B. claims that his counsel performed deficiently because he failed to impeach Officers Bucci and Conley with information contained in their personnel files that demonstrates police misconduct. According to D.B., this evidence would have greatly diminished the credibility of the officers.
 {¶ 59} First, we note that the record in this case does not demonstrate that such material even exists. There is simply no evidence regarding what is contained in the personnel files of Officer Bucci or Officer Conley, much less that there is information alleging misconduct in the performance of their official duties. Second, such extrinsic evidence would not have been admissible in any event, and could not even be inquired into on cross-examination of the officers unless the matter was probative of the officer's character for truthfulness. See: Evid.R. 608(B); State v. Penland (1998), 132 Ohio App.3d 176. Defense counsel did what the rules of evidence allow him to do; cross-examine Officers Bucci and Conley regarding the appropriateness of their conduct in this particular case and whether that conduct complies with police department rules and regulations. No deficient performance by defense counsel has been demonstrated and ineffective assistance of counsel has not been established.
 {¶ 60} D.B.'s second assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. And Fain, J., concur.