[Cite as *In re G.E.*, 2024-Ohio-1074.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

IN THE MATTER OF: G.E.

:
:
: C.A. No. 2023-CA-48
:
: Trial Court Case No. 20230179
:
: (Appeal from Common Pleas Court-
: Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on March 22, 2024

. . . . . . . . . . .

LAWRENCE J. KRAMER, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} G.E. appeals from his delinquency adjudication in the Clark County Juvenile Court on charges of rape, attempted rape, and gross sexual imposition ("GSI"). The trial court did not abuse its discretion in weighing the credibility of the witnesses, and the findings of delinquency on charges of rape and attempted rape were not against the manifest weight of the evidence. The State concedes that G.E.'s adjudication for GSI

was improper because there was no evidence that G.E. engaged in sexual contact with the victim, E.S., for the purpose of sexually arousing or gratifying either person. The findings of delinquency are affirmed as to the rape and attempted rape, and the finding of delinquency is vacated as to the GSI. The matter is remanded to the trial court for a new disposition.

**FACTS AND PROCEDURAL HISTORY**

{¶ 2} The events giving rise to this matter occurred on January 19, 2023, and involved 13-year-old boys travelling home on a school bus from a junior high basketball game. G.E. was subsequently charged with delinquency in the Clark County Juvenile Court for the offenses of rape, attempted rape, and GSI. After a trial, the court found G.E. delinquent on all three charges. It committed G.E. to the Ohio Department of Youth Services for a minimum term of one year to a maximum term until his 21st birthday, but it suspended the sentence. The court placed G.E. on indefinite juvenile sex offender probation and ordered him to complete intensive out-patient treatment with a certified juvenile sex offender therapist. G.E. appeals.

**ASSIGNMENTS OF ERROR AND ANALYSIS**

{¶ 3} G.E. asserts two assignments of error which we will consider together:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT APPLIED DIFFERENT STANDARDS TO THE TESTIMONY OF THE ACCUSER AND THE ACCUSED.

APPELLANT'S CONVICTIONS FOR VIOLATING R.C. 2923.02(A), R.C. 2907.02(A), AND R.C. 2907.05(A)(1) ARE AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE.

{¶ 4} In his first assignment of error, G.E. argues that it was unreasonable for the trial court to overlook the contradictions and inconsistencies in the testimony of E.S., yet dismiss G.E.'s testimony as rehearsed.   In his second assignment of error, he argues that most of the State's witnesses supported his version of events, while E.S.'s testimony was inconsistent and contradictory.

{¶ 5} At trial, the State presented the testimony of E.S. and three other boys, all of whom were on the bus when the offenses occurred, and the testimony of a detective who investigated the incident.   G.E. presented the testimony of his coach, who was also on the bus, the bus driver, and he testified himself.

{¶ 6} E.S. testified that on January 19, 2023, five or ten minutes into a bus ride home after a basketball game, he was sitting in the second to last row of seats with his feet on the seat beside him and his back to the window.   While three other boys, including G.E., were moving around the back of the bus in the aisle, G.E. leaned into E.S.'s seat and placed his finger into E.S.'s rectum through his shorts and underwear.   According to E.S., this happened three times, although G.E. attempted to do it about eight times.   The second time it happened, G.E. got into E.S.'s seat and, while on top of him, forced his finger inside E.S.'s rectum.   The third time, G.E. pushed another boy, M.S., on top of E.S., and G.E. pushed his finger inside E.S.'s rectum through his shorts while G.E. held M.S. down on top of E.S.   E.S. testified that another boy, A.P., took a photograph, and M.S. got up, told him not to send the photo, and tried to take A.P.'s phone.   During each occurrence, E.S. told G.E. repeatedly to stop in a regular tone of voice.   E.S. did not

immediately report the incident because he felt pressured not to say anything, but after two weeks, and after G.E. was rude to E.S.'s brother, E.S. told his parents what had happened.

{¶ 7} On cross-examination, E.S. stated that there had been sufficient light for him to clearly see G.E. He acknowledged that he did not see him the third time while M.S. was on top of him until M.S. got up, but he heard G.E. laughing about the offense at the time. Exhibit A, a video from the school bus, was played for the court. E.S. stated that he had known G.E. since third grade and was "very clear" that G.E. touched him in the manner described.

{¶ 8} A.P. testified that he had observed G.E. "fingering" E.S. and "trying to shove it up [E.S.'s] butt" one time. A.P. was on his phone at the time, but he denied taking any photographs. On cross-examination, A.P. testified that, although G.E. was moving between seats, G.E. was in E.S.'s seat when the incident he observed occurred.

{¶ 9} M.S. testified that he, G.E., and A.P. liked to switch seats while riding the bus, and that E.S. had been "sitting with his back against the window with his legs spread watching his phone." According to M.S., G.E. "thought it was a joke to do it. So he went into the seat" and "stuck his fingers up [E.S.'s] butt." M.S. observed it happen one time for about 10 seconds. On cross-examination, M.S. testified that it was "pretty dark" on the bus. E.S. told M.S. about what had happened to him on the bus at school, and M.S. acknowledged that what he had told the principal and the school resource officer had been partially based upon what E.S. had told him. M.S. stated that G.E. had pushed him into the "crevice" portion of E.S.'s seat. M.S. did not remember any photos being taken.

M.S. stated that the incident happened halfway through the bus ride.

{¶ 10} A.V. testified that he had been on the bus on the date of the incident and that G.E. had "tried to put his finger in [E.S.'s] behind." A.V. heard E.S. tell G.E. to stop a few times, and G.E. only stopped after being told to do so. A.V. did not recall anyone taking photographs.

{¶ 11} Detective Brian Melchi of the Clark County Sheriff's Office was assigned to investigate the allegations. When Melchi advised G.E. about the allegations, G.E. indicated "that there might be some kids trying to get him in trouble at school." G.E.'s mother showed Melchi messages from students "calling him out" for the incident. G.E. denied having any physical contact with E.S. Melchi obtained surveillance video of the bus trip and observed students moving around on the bus, but he was unable to identify specific students. Melchi's interview of G.E. was played for the court. Melchi indicated that, as a matter of course, it is always best to obtain witness statements close in time to an incident.

{¶ 12} At the conclusion of the State's case, defense counsel moved for an acquittal. The court overruled the motion.

{¶ 13} John Schmid, the eighth-grade basketball coach for the boys' school, then testified on behalf of G.E. Schmid was on the bus on January 19, 2023, in the front seat. Schmid did not remember any commotion at the back of the bus and had not heard anyone yelling "stop." He learned of the incident after being contacted by E.S.'s father and informed by the middle school principal.

{¶ 14} School bus driver Kim Bereczky drove the bus on January 19, 2023; she

testified that there was nothing "special that stuck out" to her about the trip. According to Bereczky, if someone had been yelling, she would have heard it and would have immediately turned the lights on. She did not notice any students who seemed to be upset getting off the bus after the trip.

{¶ 15} G.E. testified that he, M.S., and A.P. had "all just hopp[ed] around on the bus switching from seat-to-seat playing around and wrestling" like they did on every bus ride; later, he was called into the principal's office and "got accused of doing that stuff" to E.S., which he denied doing. G.E. testified that he had been in the seat with E.S. for five or ten seconds while jumping around; at the time, M.S. was in the "crevice," E.S. "had his legs up against the wall," and G.E. had his back to E.S. with his feet in the aisle. G.E. was mostly able to identify himself and the other boys moving around in the back of the bus, although it was "pretty dark." G.E. testified that he had had no physical contact with E.S., and he stated that his testimony was consistent with what he had told the principal at school. G.E. stated that he never heard E.S. say "stop" and did not remember any photographs being taken.

{¶ 16} In rendering judgment, the juvenile court observed that G.E. had admitted being in the same seat as E.S. while M.S. was in the "crevice." The court further noted that A.P. had observed G.E. put his finger in E.S.'s rectum, M.S. had observed G.E. put his finger in E.S.'s rectal area, and A.V. had observed G.E. try to put his finger in E.S.'s rectum and had heard E.S. tell G.E. to stop. The court found it significant that, on the video of the bus ride, someone from the back of the bus could be heard saying "stop." The court found that neither Schmid nor Bereczky had paid attention to or addressed the

unruly behavior of the boys, which the video clearly depicted in the back of the bus.

{¶ 17} The court specifically found that the testimonies of the witnesses and the victim were "contradictory at times," but that those contradictions were to be expected given the age of the witnesses and the length of time from the incident to trial. The court found, however, that "all the witnesses were consistent with their testimony that [G.E.] touched the rectal area of the victim"; A.V. also testified that G.E. "tried to put his finger in the victim's rectum."

{¶ 18} The court found that G.E.'s testimony "appeared rehearsed" because he was able to identify his actions and the other boys' actions throughout much of the video, despite the fact that it was unclear "which boy was attached to which boy image." (It was apparent that the dark images in the back of the bus were the boys jumping around and hitting each other.) According to the court, because G.E. testified that the unruly behavior reflected in the video was typical for the boys, it was "somewhat surprising" that he was able to recall "the specific details of the movement of the boys for this particular ride." The court found G.E.'s testimony less credible than that of the other witnesses and E.S.

{¶ 19} As to the testimonies of the other boys, the court noted that each was consistent throughout, maintaining that they saw G.E. touching the victim's rectal area. The court found no reason why these witnesses would provide false testimony. Finally, due to the darkness on the bus, the court concluded that none of the witnesses had been in a position to witness whether G.E.'s finger actually penetrated the rectal area of the victim; E.S. would have been the only person able to provide that level of detail, and E.S. testified that G.E. did so on three occasions and attempted to do so several other times.

The court concluded that, although G.E. denied ever touching E.S., the "credible evidence" suggested otherwise.

{¶ 20} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *In re D.B.*, 2d Dist. Montgomery No. 20979, 2005-Ohio-5583, ¶ 14, citing *State v. Hufnagle,* 2d Dist. Montgomery No. 15563, 1996 WL 501470 (Sept. 6, 1996). In a manifest weight challenge, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether the finder of fact clearly lost its way and created such a manifest miscarriage of justice as to warrant reversal. *In re D.P.,* 2d Dist. Greene No. 2023-CA-33, 2024-Ohio-480, ¶ 40, quoting *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 21} It is well-settled that the "primary question of witness credibility lays with the finder of facts." *In re A.E.*, 2d Dist. Greene No. 2006-CA-153, 2008-Ohio-1864, ¶ 15, citing *State v. DeHass*, 10 Ohio St.2d 230, 2008-Ohio-1864, 227 N.E.2d 212, paragraph one of the syllabus. "The factfinder may accept or reject all, part, or none of the testimony of each witness." *Id.,* citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' "

*Id.,* quoting *In re J.S.,* 2d Dist. Montgomery No. 22063, 2007-Ohio-4551, ¶ 50, quoting *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).   An appellate court should not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.   *In re C.M.*, 2d Dist. Montgomery No. 21363, 2006-Ohio-3741, ¶ 41.

{¶ 22} As noted above, G.E. was adjudicated delinquent on charges of rape, attempted rape, and GSI.   R.C. 2923.02 proscribes rape as follows: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."   R.C. 2923.02 governs attempt and states: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."   R.C. 2907.05(A) proscribes GSI: "No person shall have sexual contact with another * * * when * * * (1) The offender purposely compels the other person * * * to submit by force or threat of force."

{¶ 23} Sexual conduct includes "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the * * * anal opening of another." R.C. 2907.01(A).   Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, [or] pubic region * * * for the purpose of sexually arousing or gratifying either person."   R.C. 2907.01(B).

{¶ 24} Having reviewed the entire record, we conclude that, as to the offenses of rape and attempted rape, this is not an exceptional case in which the evidence weighed heavily against G.E.'s convictions.   On the video from the bus trip, boys can be seen

moving from seat to seat in the manner described by G.E. and E.S., but it was dark in the back of the bus and, as Detective Melchi indicated, the individual identities of the boys were not discernible. Moreover, the bus driver and the coach both appear to have been paying no attention whatsoever to the activity behind them in the rear of the bus. Although there were inconsistencies in the testimony about the point in time on the bus trip when the offenses occurred, the level of darkness on the bus, and whether photographs were taken, E.S. testified without hesitation that G.E. had placed his finger in his rectum three times through his clothing and attempted to do so multiple other times. The juvenile court credited E.S.'s testimony. The juvenile court found G.E. to be "rehearsed" and "less credible" than E.S. and the other witnesses, based upon G.E.'s recitation of his actions and location on the bus during a situation that had been fluid and had occurred months earlier. We defer to the court's assessment of credibility. Each of the other boys provided consistent testimony as to G.E.'s sexual conduct in touching E.S. On these bases, G.E.'s adjudications for rape and attempted rape were not against the manifest weight of the evidence.

{¶ 25} G.E. also argues that the trial court's finding of delinquency because he had committed GSI was against the manifest weight of the evidence. However, the State acknowledges that "there was no evidence of sexual gratification." State's Brief at 7. Failure to establish an element of an offense goes to the sufficiency of the evidence, not its weight. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery

No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Because the State concedes that there was no testimony from any witness that G.E. had engaged in sexual contact with E.S. for the purpose of sexually arousing or gratifying either person, the finding of delinquency for GSI was supported by insufficient evidence and must be vacated.

{¶ 26} Based upon the foregoing, G.E.'s first assignment of error is overruled. His second assignment of error is overruled in part and sustained in part. The trial court's adjudication is affirmed as to the findings of delinquency for committing rape and attempted rape and is vacated as to the finding of delinquency for committing GSI. This matter will be remanded for a new disposition in light of our having vacated the GSI, at which time the trial court will consider whether any change in the disposition is appropriate.

. . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.