[Cite as *In re C.W.*, 2024-Ohio-3031.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

IN THE MATTER OF C.W.

:
:
:
:   C.A. No. 2024-CA-18
:
:   Trial Court Case No. 20230440
:
:   (Appeal from Common Pleas Court-
:   Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on August 9, 2024

. . . . . . . . . . .

ALANA VAN GUNDY, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} C.W. appeals from the trial court's judgment entry adjudicating her delinquent for engaging in robbery in violation of R.C. 2911.02(A)(2) and imposing a suspended one-year commitment.

{¶ 2} C.W. contends the trial court should have dismissed the robbery case because the complaint failed to comply with Juv.R. 10(B). She claims dismissal also was required because the State violated Juv.R. 16 regarding service of process. She further asserts that she should have been admonished for assault, not adjudicated delinquent for robbery, where the State waived any objection to the lesser disposition. Finally, she argues that the robbery adjudication was against the weight of the evidence.

{¶ 3} We conclude that the trial court properly allowed the State to amend the robbery complaint to comply with Juv.R. 10(B). The record also reveals no violation of Juv.R. 16. With regard to waiver, the State did not waive an objection to admonishment for assault. Regardless, after objecting to admonishment, the State dismissed a complaint alleging assault and filed a new complaint alleging that C.W. had engaged in conduct constituting robbery. The State's evidence supported a delinquency adjudication for robbery. Accordingly, the trial court's judgment will be affirmed.

## I. Facts and Course of Proceedings

{¶ 4} A Springfield police officer filed a May 2023 complaint alleging that C.W. was delinquent for engaging in conduct that constituted misdemeanor assault. The complaint alleged that she knowingly had struck the victim in the face and head with a closed fist. A probable-cause affidavit accompanying the complaint alleged that several girls had participated in the assault and that one of them had taken the victim's cell phone before they all fled. An intake officer recommended admonishment for the incident. On June 23, 2023, the trial court filed an entry indicating that admonishment was proper but granting the State seven days to object. The State timely objected on June 27, 2023. Thereafter,

in a June 29, 2023 entry, the trial court noted the objection but asked the State to confer with the intake officer about the case. The trial court granted the State 10 days to file a recommendation for disposition if it continued to object.

{¶ 5} Instead of pursuing the assault charge, the State responded by filing a second complaint on July 7, 2023, under a new case number. The new complaint alleged that C.W. was delinquent for engaging in conduct that constituted robbery. In particular, it alleged that C.W. did "in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, inflict, attempt to inflict, or threaten to inflict physical harm on another." A probable-cause affidavit accompanying the robbery complaint contained the same allegations about C.W. and her companions assaulting the victim before taking the victim's cell phone and fleeing.

{¶ 6} Five days after filing the robbery complaint, the State moved to dismiss the assault complaint. The trial court sustained the motion and dismissed the assault case on November 1, 2023. In its dismissal entry, the trial court also deemed the robbery complaint deficient under Juv.R. 10(B) insofar as it omitted facts "as to a description of the property stolen or attempted to be stolen, no facts as to whether the youth fled immediately after the alleged theft offense or attempt, and no facts as to any infliction or threat of harm to the alleged victim that occurred during the alleged theft or fleeing." Despite these details being recited in the affidavit accompanying the robbery complaint, the trial court directed the State to show cause why the complaint should not be dismissed under Juv.R. 10(B).

{¶ 7} A show-cause hearing occurred on November 6, 2023. During the hearing,

the trial court permitted the State to amend its complaint under Juv.R. 22. The following day, the trial court filed an entry acknowledging amendment of the robbery complaint to include the following facts: "That Defendant did knowingly inflict or attempt to inflict or threaten to inflict physical harm on [the victim] in an attempt to steal [the victim's] cell phone or fleeing immediately after the attempt. The Defendant did knowingly inflict physical harm to [the victim] and steal her cell phone."

{¶ 8} The case proceeded to a November 21, 2023 adjudicatory hearing. Based on the evidence presented, the trial court adjudicated C.W. delinquent for engaging in conduct that constituted robbery. The trial court imposed a suspended one-year commitment and placed C.W. on 90 days of intensive probation. The trial court journalized the delinquency adjudication and the disposition in a February 20, 2024 judgment entry. C.W. timely appealed, advancing four assignments of error.

## II. Compliance with Juv.R. 10(B)

{¶ 9} C.W.'s first assignment of error states:

**The complaint for case 2023-0440 did not comply with Juvenile Rule 10(B).**

{¶ 10} C.W. contends the robbery complaint was defective under Juv.R. 10(B) and amendment should not have been permitted. Her primary argument is that the trial court erred in allowing the State to amend a charge from a misdemeanor to a felony. She claims the amendment changed the identity of the offense. She also notes that the assault and robbery affidavits were nearly identical, reasoning that "additional facts" were needed to amend the charge from a misdemeanor to a felony. Finally, C.W. asserts that it was unfair to charge her with a "high-level offense" and that she was prejudiced because the penalty

for robbery was greater than the penalty for assault.

{¶ 11} Upon review, we find C.W.'s arguments to be unpersuasive. Under Juv.R. 10(B), a delinquency complaint must include "the essential facts that bring the proceeding within the jurisdiction of the court." In the show-cause hearing, the trial court determined that the robbery complaint had omitted the requisite essential facts. It allowed the State to amend the complaint under Juv.R. 22 to include the factual allegations quoted above. The trial court properly permitted the amendment because Juv.R. 22(B) authorizes a complaint to be amended "at any time prior to the adjudicatory hearing."

{¶ 12} Contrary to C.W.'s argument, the amendment also did not elevate her offense from a misdemeanor to a felony. Nor did the amendment change the name or identity of the violation. At the State's request, the trial court dismissed the misdemeanor assault case, and the State filed a new complaint with a new case number alleging conduct that constituted robbery. The only amendment occurred within the robbery case when the State added a recitation of essential facts.

{¶ 13} C.W. correctly notes that the assault and robbery affidavits were virtually identical. But that observation has no bearing on the propriety of the trial court's allowing the State to amend the robbery complaint under Juv.R. 22 to include a missing factual recitation. Likewise, C.W.'s argument about being charged with a more serious offense and facing a more significant penalty says nothing about the propriety of the State's amending the robbery complaint to cure a defect under Juv.R. 10(B). Because the trial court properly permitted the State to amend the complaint to comply with Juv.R. 10(B), we overrule C.W.'s first assignment of error.

### III. Compliance with Juv.R. 16

{¶ 14} C.W.'s second assignment of error states:

**The State violated Juvenile Rule 16.**

{¶ 15} Citing language in Juv.R. 16 addressing service of a summons, C.W. contends the State did not perfect service of documents in the assault case prior to filing the robbery complaint.

{¶ 16} This assignment of error lacks merit for at least two reasons. First, Juv.R. 16 addresses service of a summons or a warrant. None of the documents C.W. references was a summons or a warrant. Therefore, the rule had no applicability. Second, the documents C.W. mentions appear to have been filed in the dismissed assault case. Indeed, C.W. argues that "*[p]rior to the refiling*, the State did not perfect service on any documentation." (Emphasis added.) Given that the assault case ultimately was dismissed, we fail to see the significance of what was or was not served in it. For these reasons, we overrule C.W.'s second assignment of error.

### IV. Objection to Admonishment

{¶ 17} C.W.'s third assignment of error states:

**The State waived its right to object when it did not respond to the order in the time required by the Court.**

{¶ 18} C.W. contends the State ignored the trial court's June 29, 2023 entry asking the State to confer with an intake officer about a possible disposition of the assault case. C.W. reasons that the State waived any objection to admonishment for assault by not doing so.

{¶ 19} C.W.'s argument lacks merit. On June 27, 2023, the State objected to a proposed admonishment on the assault charge. In response, the trial court asked the State to confer with the intake officer about the case. Instead, the State promptly moved to dismiss the assault case and filed a new complaint alleging that C.W. had engaged in conduct constituting robbery. Nothing precluded that State from pursuing this course of action. Moreover, given that the trial court later dismissed the assault case, the State's failure to confer with the intake officer about it was immaterial. The third assignment of error is overruled.

### V. Weight of the Evidence

{¶ 20} C.W.'s final assignment of error states:

**C.W.'s conviction is against the manifest weight of the evidence.**

{¶ 21} C.W. contends her delinquency adjudication was against the weight of the evidence. In support, she alleges the existence of conflicting testimony about how she arrived at the scene of the assault and about whether the victim remained on the ground after the assault. C.W. also references testimony about the victim's cell phone. She cites allegedly conflicting testimony about whether she or another one of the perpetrators had possession of the phone. Finally, C.W. stresses her own testimony that she was unaware the phone was taken until she left the scene.

{¶ 22} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *In re D.B.*, 2005-Ohio-5583, ¶ 14 (2d Dist.). In a manifest-weight challenge, the appellate court weighs the evidence and reasonable inferences,

considers witness credibility, and determines whether the fact-finder clearly lost its way and created a manifest miscarriage of justice. *In re D.P.*, 2024-Ohio-480, ¶ 40 (2d Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. A delinquency adjudication will be reversed as being against the weight of the evidence only in exceptional circumstances. *In re G.E.*, 2024-Ohio-1074, ¶ 20 (2d Dist.).

**{¶ 23}** With the foregoing standards in mind, we reject C.W.'s manifest-weight challenge. The State's first witness was J.S., a bystander who testified that she observed a fight at Snyder Park in Clark County on May 4, 2023. J.S. saw C.W. and two other girls "beating up" the victim by hitting her with their fists. The perpetrators stopped when J.S. yelled at them. J.S. watched the assailants leave the scene together in a car. As they left, one of the girls yelled to the victim, "I have your phone. I'm not giving it back." J.S. testified that C.W. was not the person who yelled, but the three girls were together when they left with the phone.

**{¶ 24}** H.N., the victim, also testified at the adjudicatory hearing. H.N. provided background information regarding her arrival at the park and the circumstances leading up to the fight. With regard to the incident itself, H.N. testified that C.W. and two others rushed her and began hitting her while she was sitting on a rock. H.N. also testified that C.W. grabbed her cell phone before throwing or passing it to one of the other girls. According to H.N., the perpetrators all left together in a car with her phone.

**{¶ 25}** C.W. testified in her own defense. She admitted starting a fight with the victim by throwing the first punch. C.W. denied seeing the victim drop a cell phone. She also denied picking up the victim's cell phone. C.W. insisted that she knew nothing about

the phone until she was leaving with her companions. As they left, C.W. heard one of them say, "I got her phone." C.W. responded, "[F]or what?" C.W. denied ever touching the victim's phone.

{¶ 26} Although C.W. contends the record contains conflicting evidence about how she arrived at the park and whether the victim remained on the ground after being assaulted, these issues were unimportant. The only significant factual dispute concerned C.W.'s actions regarding the victim's cell phone and her awareness of it being taken. On that issue, eyewitness J.S. testified that one of C.W.'s companions yelled about having the victim's phone while leaving with C.W. For her part, the victim testified that C.W. physically took her phone before passing it to another one of the assailants. Finally, C.W. denied knowing anything about the phone until she was leaving the park.

{¶ 27} The trial court was best positioned to assess witness credibility and resolve conflicts in their testimony. In so doing, the trial court found that C.W. and her companions had assaulted the victim and, "as they were fleeing, one of the girls grabbed the victim's phone that had fallen to the ground during the assault." January 5, 2024 Judgment Entry at 1. The trial court identified the person who grabbed the phone as N.E., who was one of C.W.'s companions. *Id.* at 2. The trial court adjudicated C.W. delinquent based on complicity. *Id.* It found that C.W. had "assaulted the victim with the intention of stealing the victim's cell phone" and also had acted in concert with her companions to "inflict harm on the victim and in fleeing the scene, stole her cell phone." *Id.*

{¶ 28} The trial court did not clearly lose its way or create a manifest miscarriage of justice in relying on a theory of accomplice liability to adjudicate C.W. delinquent for

engaging in conduct that constituted robbery. Accordingly, the fourth assignment of error is overruled.

### VI. Conclusion

{¶ 29} Having overruled C.W.'s assignments of error, we affirm the judgment of the Clark County Common Pleas Court, Juvenile Division.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.